UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TYLER MITCHELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:19-cv-1744-JMS-DML |
| | ) |
| I CAN SCHOOLS, n.k.a. ACCEL SCHOOLS OHIO, LLC, | ) |
| DYNAMIC PUBLIC SCHOOLS, n.k.a. CINCINNATI NORTH PREPARATORY SCHOOL, INC., d.b.a. SOUTHWEST OHIO PREPARATORY SCHOOL, | ) |
| PANSOPHIC LEARNING LLC, | ) |
| INDIANA COLLEGE PREPARATORY SCHOOL, INC., and | ) |
| AETNA HEALTH, INC., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Plaintiff Tyler Mitchell brings this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 *et seq.*, and Indiana law. She alleges that her employer-provided health insurance was cancelled without her knowledge, leaving her liable for medical costs incurred when she gave birth to her child. Defendants Accel Schools Ohio, LLC, ("Accel") and Pansophic Learning, LLC, ("Pansophic") (collectively, "Accel/Pansophic") have filed a Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement, [Filing No. 23], which is now ripe for review.

**I.
STANDARD OF REVIEW**

The Federal Rules of Civil Procedure require only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting

Fed. R. Civ. P. 8(a)(2)).  The complaint need only provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).  In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019).

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain allegations that collectively "state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## II.
### BACKGROUND

Consistent with the standard of review described above, the following allegations from the Complaint are accepted as true for purposes of deciding the Motion to Dismiss.  In 2015, Ms. Mitchell was hired by I CAN Schools, Inc. ("I CAN") to teach at Indiana College Preparatory School ("ICPS"). [Filing No. 1 at 3-4.]  As a part of her employment, Ms. Mitchell had medical, dental, and vision insurance coverage, and a deduction was taken from each of her paychecks to pay for her contribution towards the cost of this coverage.  [Filing No. 1 at 4.]  Her medical insurance was under a group policy written by Aetna. [Filing No. 1 at 4.]

When Ms. Mitchell began her employment, I CAN was a nonprofit charter school management organization that managed approximately seven schools in Ohio as well as ICPS in Indiana. [Filing No. 1 at 3-4.]  In 2016, one of the founders of I CAN created Dynamic Public

Schools ("DPS").  [Filing No. 1 at 4.]  In March of 2017, the board of I CAN voted to have "the Accel Charter School Network take over its seven (7) Ohio schools."  [Filing No. 1 at 4.]  "ICPS was not part of the transfer," and "remained part of the DPS Network."  [Filing No. 1 at 5.]

Meanwhile, in November 2016, Ms. Mitchell had notified the "School Defendants" that she was pregnant and would need to take medical leave in or around June 2017 for the birth of her child.  [Filing No. 1 at 4.]  On December 1, 2016, she renewed her medical insurance coverage with Aetna and enrolled in an Open Access Managed Choice Plan, which was sponsored by Pansophic, the parent company to Accel and I CAN.  [Filing No. 1 at 4; Filing No. 1 at 2.]  On April 30, 2017, unbeknownst to Ms. Mitchell, her medical coverage was cancelled.  [Filing No. 1 at 5.]  Ms. Mitchell took FMLA leave from May 22 to July 10, 2017.  [Filing No. 1 at 5.]  On August 1, 2017, again unbeknownst to Ms. Mitchell, her health coverage was reinstated, and DPS was listed as the Plan Sponsor.  [Filing No. 1 at 5.]  She resigned from her job at ICPS on October 30, 2017, still unaware that she had not had medical insurance coverage from April 30 to July 31, 2017.  [Filing No. 1 at 6.]  Contributions for her medical insurance were continuously deducted from each of Ms. Mitchell's paychecks for the duration of her employment.  [Filing No. 1 at 6.]

On January 19, 2018, Ms. Mitchell was contacted by a debt collector who informed her that she owed money for inpatient medical services rendered in May 2017.  [Filing No. 1 at 6.]  Ms. Mitchell then contacted the hospital, who informed her that Aetna had initially paid for her medical services, but had requested a refund several months later, claiming that Ms. Mitchell did not have coverage when the services were rendered.  [Filing No. 1 at 6.]  She then contacted Aetna, and an Aetna representative informed her that Defendants had cancelled her medical coverage on April 30, 2017.  [Filing No. 1 at 6.]  Ms. Mitchell then obtained a document from Aetna, which showed that she had medical insurance coverage that became effective on December 1, 2016 and

was terminated on April 30, 2017. [Filing No. 1 at 7.] The plan sponsor listed on this documentation was Pansophic. [Filing No. 1 at 7.] Ms. Mitchell also obtained another document showing that her medical coverage became effective on August 1, 2017, and was terminated on October 31, 2017, with DPS listed as the plan sponsor. [Filing No. 1 at 8.]

In the Complaint, Ms. Mitchell asserts the following causes of action related to Defendants' unilateral cancellation of her medical insurance: (1) "Interference and/or Retaliation" under the FMLA, [Filing No. 1 at 8-9]; (2) a violation of COBRA, [Filing No. 1 at 9]; (3) interference with benefits under ERISA, [Filing No. 1 at 9-10]; (4) denial of benefits under ERISA, [Filing No. 1 at 10]; (5) breach of fiduciary duty under ERISA, [Filing No. 1 at 10-11]; and (6) theft and conversion under Indiana law, [Filing No. 1 at 11-12]. Accel and Pansophic have jointly moved to dismiss Ms. Mitchell's claims against them, or, in the alternative, for a more definite statement. [Filing No. 23.]

### III.
#### DISCUSSION

Accel/Pansophic argue that Ms. Mitchell's claims against them should be dismissed because she has not sufficiently pled the existence of an employment relationship. [Filing No. 24 at 5-8.] Specifically, they argue that Ms. Mitchell's allegation that ICPS was not part of I CAN's transfer of its seven Ohio schools to Accel constitutes an admission that she was never employed by either Accel or Pansophic. [Filing No. 24 at 5-6.] They also argue that her allegation that I CAN is "now known as" Accel is purely speculative, and she does not allege facts showing that a relationship existed between Accel or Pansophic and DPS. [Filing No. 24 at 6.] Accel/Pansophic ask the Court to take judicial notice of I CAN's and Accel's corporate filings made with the Ohio Secretary of State, which, they allege, show that no relationship existed between those two entities. [Filing No. 24 at 7-8.] Accel/Pansophic further argue that Ms. Mitchell's claims for theft and

- 4 -

conversion also fail because the allegedly unlawful wage deductions occurred during the course of her employment. [Filing No. 24 at 8.] Finally, they ask that, if the Court denies their Motion to Dismiss, it order Ms. Mitchell to amend her complaint to include a more definite statement concerning which of the named Defendants was her employer and when, as well as which Defendants are responsible for which unlawful conduct. [Filing No. 24 at 8-10.]

Ms. Mitchell responds that the allegations in the Complaint are sufficient to create a plausible inference of an employment relationship between herself and Accel/Pansophic because she alleges that: (1) her claims arose out of an employment relationship with all of the Defendants, and she is an "employee" within the meaning of the FMLA and ERISA; and (2) her medical coverage was a term of her employment, and Pansophic was listed as the plan sponsor. [Filing No. 34 at 5-6.] She argues that Accel/Pansophic, in asking the Court to conclude that no employment relationship existed, are in substance asking the Court to ignore these allegations and to infer information not contained in the Complaint. [Filing No. 34 at 6.] Furthermore, while Ms. Mitchell acknowledges that public records maintained by the Secretary of State are generally the type of documents that can be judicially noticed, the offered documents do not indicate whether Accel or Pansophic are parent, subsidiary, or successor corporations to I CAN or ICPS, and do not bear on the ultimate question of whether she has properly pled the existence of an employment relationship. [Filing No. 34 at 8.] Finally, Ms. Mitchell asserts that an employment relationship is not an element of her claims for theft or conversion under Indiana law. [Filing No. 34 at 8-9.]

In reply, Accel/Pansophic assert that the Court need not accept as true the legal conclusion that Ms. Mitchell was an "employee," and they maintain that her allegations demonstrate that she was not. [Filing No. 37 at 1-4.] They further argue that the allegation that Pansophic was the plan sponsor, without more, does not demonstrate that it was her employer. [Filing No. 37 at 4.] In

addition, Accel/Pansophic argue that Ms. Mitchell's failure to differentiate between the named Defendants or explain which entity employed her at what time, and what unlawful conduct each engaged in, amounts to a failure to state a plausible claim for relief. [Filing No. 37 at 4-5.] They maintain that the attached records from the Secretary of State demonstrate that no relationship existed between Accel, Pansophic, and I CAN, and those documents should be judicially noticed. [Filing No. 37 at 5-6.]

It appears that Accel/Pansophic misunderstand the standard of review at the motion to dismiss stage or have chosen to ignore it. As stated above, the Court is required to accept all facts in the Complaint as true for purposes of deciding this motion. *See Alarm Detection Sys.*, 930 F.3d at 821. Accel/Pansophic assert that Ms. Mitchell has failed to allege facts showing an employment relationship, yet she made the following allegations: (1) her claims "arise out of her employment relationship with the Defendants," [Filing No. 1 at 2]; (2) I CAN—the entity that hired her—is now known as Accel and is a subsidiary of Pansophic, [Filing No. 1 at 2; Filing No. 1 at 4]; (3) Ms. Mitchell received healthcare coverage as a term of her employment, which was paid for in part with deductions from her paycheck, [Filing No. 1 at 4]; and (4) Pansophic was the plan sponsor for such healthcare from December 1, 2016 to April 30, 2017, when her coverage was unilaterally cancelled, [Filing No. 1 at 7]. These allegations are sufficient to give rise to an inference that Accel/Pansophic were involved in an employment relationship with Ms. Mitchell and were responsible for the erroneous cancellation of her health insurance.[1] *See Iqbal*, 556 U.S. at 678.

---

[1] Additionally, the Court points out that the plan sponsor is often the employer, employee organization, or group of representatives of the employers or organizations who maintain the plan. *See* 29 U.S.C. § 1002(16)(B) (defining "plan sponsor"). Moreover, the plan sponsor can be the proper defendant in an ERISA action. *See Friedman v. Pension Specialists, Ltd.*, No. 11 CV 5057, 2012 WL 983784, at *3 (N.D. Ill. Mar. 19, 2012) (denying a motion to dismiss and rejecting argument that the plan sponsor could not be a proper defendant). The plan sponsor also may have fiduciary obligations under ERISA and obligations under COBRA. *See Wal-Mart Stores, Inc.*,

They also sufficiently provide Accel/Pansophic with fair notice of Ms. Mitchell's claims and the grounds upon which they are based. *See* Fed. R. Civ. P. 8(a)(2); *Erickson*, 551 U.S. at 93.

Arguably, Ms. Mitchell's allegation that the school where she taught "was not part of the transfer" when Accel "took over" some schools operated by I CAN, [Filing No. 1 at 4-5], adds a measure of ambiguity to the question of how and when Accel/Pansophic became her employer and how the corporate relationships between the various entities were affected by this transfer. Again, however, the standard of review requires that the Court resolve ambiguities and draw reasonable inferences in favor of the plaintiff at this stage in the proceeding, and Ms. Mitchell's other factual allegations are sufficient to support an inference that Accel/Pansophic was indeed her employer at some point in time. *See Alarm Detection Sys.*, 930 F.3d at 821; *Curtis v. Bembenek*, 48 F.3d 281, 283 (7th Cir. 1995) (stating that, in the context of a motion to dismiss, a court must "accept all well-pleaded facts as true, draw all inferences in favor of the plaintiff, and resolve all ambiguities in favor of the plaintiff").

In addition, the Court will not take judicial notice of the provided records from the Ohio Secretary of State. Although the Court would be permitted to do so if the documents conclusively determined a relevant fact, *see e.g.*, *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) (stating that a court may take judicial notice of facts that are not subject to reasonable dispute and capable of accurate and ready determination through sources whose accuracy cannot be questioned), that is not the case here. The offered documents do not address whether I CAN or Accel were related in any way to each other. While this may support an inference that no such relationship existed, it

---

226 F.3d 574, 590 (7th Cir. 2000) (explaining that a fiduciary is any entity that exercises a degree of discretion over the management or administration of the plan); 29 U.S.C. § 1161(a) (creating obligation of the plan sponsor to notify beneficiaries of the option to elect continuation of coverage). These principles further underscore the Court's conclusion that dismissal of Accel/Pansophic from the lawsuit at this time is improper.

does not prove that inference is true. Notably, Accel's filings also do not mention its parent/subsidiary relationship with Pansophic, which Accel and Pansophic seem to acknowledge exists. Accordingly, these documents do not provide the Court with any facts of which taking judicial notice would be appropriate.

The Court reminds the parties that ignoring the standard of review and hoping the Court will do the same is not a proper litigation tactic, as it wastes the Court's and the parties' time and resources. *See Malin v. Hospira, Inc.*, 762 F.3d 552, 564 (7th Cir. 2014) (reprimanding a party for "bas[ing] its litigation strategy on the hope that neither the district court nor [the appellate court] would take the time to check the record," and stating that such "shenanigans" destroy credibility with the court and are "both costly and wasteful"). Because Ms. Mitchell has plausibly pled the existence of an employment relationship with Accel/Pansophic, the Court denies the Motion to Dismiss and will not require that Ms. Mitchell provide a more definite statement.

## IV.
### CONCLUSION

Based on the foregoing, Accel/Pansophic's Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement, [23], is **DENIED** in its entirety.

Date: 9/20/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**